CEPHAS COBB *versus* THE HAMPSHIRE AND HAMP
DEN CANAL COMPANY.

*Two individuals having contracted with a canal corporation to construct the canal on the line on which it had been duly located under the act of incorporation, to find all the materials and to pay all damages for land taken for the canal, with a stipulation that, by the consent of the corporation, the line of the canal might be altered, these contractors, together with other persons, for the purpose of speculation in real estate, entered into an agreement with the demandant, by which he granted them liberty to construct the canal through his homestead, in a line deviating from the original location, in consideration whereof he was to have the right to retain his title, claiming no damages, or within a fixed period to convey to them his homestead for a certain price. A canal was made accordingly over the demandant's land, and afterwards the agreement was rescinded in order to place all the parties to it in the same situation as if it had never been made. The corporation subsequently made use of this portion of the canal, and in a writ of entry brought against them by the demandant, they pleaded a special non-tenure and disclaimer, by averring that they obtained a grant from the demandant, of a right to excavate, construct and use their canal and embankments over his land, and that under such grant they entered and excavated, &c., and acquired a right to occupy, use and improve the canal over the demanded premises, and that saving these rights they did not claim, &c. It was held, that the demandant's agreement with the contractors and others was no more than a personal license to those individuals, and that the plea was not sustained by the evidence.*

THIS was a writ of entry against an incorporated company, to recover a messuage in Westfield, containing five acres of land. The writ was dated the 18th of January, 1834.

The tenants plead, as to one parcel (describing it) of the land demanded, that before they entered thereon, viz. on the 1st of April, 1828, by writing obligatory and in virtue of a contract in writing, which w ting and contract are now in the possession of the demandant, or by him destroyed, they obtained from him the grant of a right to excavate, construct, and use a navigable canal, with necessary and proper embankments, in continuation of the canal adjoining the demanded premises, over and through the parcel described, and that under the grant they entered upon this parcel and there excavated and constructed the canal, and that they had and have the right to occupy, use, and improve the canal and embankments, over and along this parcel ; and saving these rights and the right to keep the canal in repair, they do not and never did claim, and they disclaim, to have any other right or any thing else in such parcel]

The demandant, in his replication, protesting that the tenants had not the right to excavate, &c., and that they have not the right to occupy, use, and improve, &c., says, that on the day of the purchase of the writ, they were tenants as of freehold of the demanded premises, and tenders an issue ; which is joined.

At the trial, before *Putnam* J., the tenants proved a contract, dated the 30th of September, 1826, between themselves and Thomas Sheldon and Davis Hurd, by which Sheldon and Hurd agree to do all the work and find all the materials for excavating and constructing the canal and feeders, from the south line of the State to the Connecticut river at Northampton, and pay all damages to which individuals should be entitled, and to finish the canal in 1829.   The line of the canal had been previously located, pursuant to the tenants' act of incorporation, but there was a stipulation in the contract, that with the consent of two thirds of a certain committee of the corporation, the line might be altered.

They also proved a contract in writing, but not under seal, between the demandant, of the first part, and Sheldon, Hurd, S. Collins, and A. Painter, of the second part, dated the 6th of November, 1827, in which it is agreed, that Sheldon, Hurd, Collins, and Painter shall have liberty to construct the canal obliquely through the homestead of Cobb ; and in consideration thereof Cobb shall have the option to retain his title to the homestead, claiming no damages for any necessary injury thereto, or at any time previous to the expiration of two years from the completion of the canal as far north as Northampton, to convey the same to Sheldon, Hurd, Collins and Painter, for the sum of $ 3500, to be paid in three annual instalments ; provided that he shall give ninety days' notice, and shall make the conveyance on the 1st of May, in the year in which he shall make his election to convey ; and if he shall not within the two years actually execute such conveyance, Sheldon, &c., shall be under no obligation ever after to pay for the same or respond in damages ; and if Cobb shall neglect to execute, on his part, the provisions of the contract, he shall pay to Sheldon, &c., $ 1000, as compensation for damages in the case.   The object of this contract was to accommodate Sheldon, Hurd, Collins

Cobb
*v.*
Hampshire
&c. Canal
Company.

and Painter, in a speculation in real estate in which they were engaged.

The canal had been located according to law a few rods west of the present route, and there was no evidence that that location had ever been altered, unless it so appears from the facts here stated.

Cobb never gave the ninety days' notice, mentioned in the contract, and Collins advised him not to convey the land, because from the failure of Collins, Sheldon and Hurd, he would probably lose all the consideration except the first payment.   On the 6th of November, 1833, the contract was rescinded and destroyed by the parties, with the intention of placing them all in the same situation as if it never had been made.   As the consideration of giving up the contract, Sheldon and Collins gave Cobb a bond to convey to him a small piece of land or pay him $100, at their election.   At the time when the contract was rescinded the homestead was not worth more than $2,500.   Collins testified that he considered the speculation an unprofitable one, and that the bond of Sheldon and himself was for a release to them from the obligation to take the homestead at a loss, and was not in compensation for the damage to the homestead.

The demandant contended, that the evidence did not support the plea, and that the tenants could not avail themselves of the contract between Cobb and Sheldon and others, unless they had by some corporate act located the canal in the place described in the plea, and had also assented to, assumed and ratified that contract.

The tenants then proved by parol evidence, the demandant objecting to its admissibility, that Hurd was their chief engineer, that he was in their employment at the period in question, that he authorized the construction of the canal, superintended the alterations in the route of the canal, directed where the surveys should be made, and directed a survey over the demandant's land, and the construction of a canal over the land described in the plea.   The tenants also proved, that Sheldon and Hurd ceased to work on the canal in 1829, or to take any further care or management of the business, in consequence of the corporation having ceased to advance them funds.   The

canal was constructed in 1828, across the demandant's land. Since Sheldon and Hurd abandoned the canal, the tenants have assumed the management of it from the State of Connecticut to Northampton, and it has been navigable from Westfield south to New Haven, since 1829, but has not been navigated over the demandant's land, except that in a few instances boats have passed over this ground. The same acts of ownership or superintendence were exercised over the part of the canal which passed over the demandant's land, as were exercised over other parts of the canal.

If the Court should be of opinion, that the tenants had supported their plea, the demandant was to be nonsuit ; otherwise the tenants were to be defaulted.

. *Mills, Wells, Alvord* and *W. G. Bates*, for the demandant. *I. C. Bates, Boise* and *Dewey*, for the tenants.

SHAW C. J. afterward drew up the opinion of the Court. The question submitted for the consideration of the Court is, whether the evidence set forth in the report is sufficient to support the plea of grant. This cause has been several times under the consideration of the Court, and they are of opinion, that the evidence is not sufficient to maintain the plea.

I shall not be able at the present time, and with no opportunity to refer to the authorities, to give all the grounds upon which this opinion is founded.

The plea alleges a grant of a perpetual easement by the plaintiff to the defendants, embracing not only an authority to enter and excavate the canal and raise the embankments, but a perpetual right to use and improve the same, for all the pur poses of a public navigable canal. If this right is not established to the breadth and extent to which it is pleaded, the plea cannot avail. The claim is of a perpetual easement, to use the place for a canal with its embankments and towing paths, a use so entirely incompatible with any beneficial use to be made of the land by the owner, that it is in effect equivalent to a claim of the fee. It is pleaded as a grant by deed. The deed produced is a personal contract between the plaintiff Cobb, on the one part, and Sheldon, Hurd, Collins and Painter, on the other part, executory in its character, not containing in terms a grant to any person. The strongest construction which can be put

*Margin:* Cobb *v.* Hampshire &c. Canal Company.

*Sept. 23d, 1835, and Sept. 30th, 1836*

upon it by the defendants is, that it amounted to a license to these individuals, to enter upon the land, and there to excavate and construct the Hampshire and Hampden Canal. But we think it would be a forced construction of this instrument, to hold it to have any greater force, at least until some further act was done, than to stand as a personal license to the individuals named. Had it not been rescinded, and had the location of the canal been legally altered, so as to pass in the direction which this deed was intended to give it, it might have operated to estop the plaintiff from claiming damages upon such location. But the location never was so altered, by any legal or binding act, and before any thing was or could be done, to give the defendants a claim to it, the contract itself was rescinded.

One point of view, in which the question presented itself to the Court, was this. Supposing this company, being authorized to excavate and build a canal, should contract with an individual to do the work, and pay all expenses, including damages for land, and such individual should procure a grant to himself personally, of the easement, to cut and for ever to use the canal, it would not of necessity enure as a grant to the individual to the use of the company, without any further act to be done by the individual to transfer such right to the company. But without deciding that question, which might be one of some difficulty and depend much upon circumstances, we think it founded upon a supposition, which the present case does not warrant. It presupposes that the location is established and fixed by law, and that the right is fixed, to acquire the easement, upon payment of the damages, and that the undertaker acts within the scope of his authority, by obtaining the grant of the easement, and actually making the canal on the line and at the place where it is fixed by law. In that case, the easement, that is, the right itself, to take and use the land for the public object of establishing a canal, would exist independently of the grant, in the company, and the grant would operate as a release only of all claim to damages, and such release would enure to those who had the right, who in the case supposed would be the company. But if the contracter and undertaker, not acting within the scope of his authority, should obtain from the owners of land a grant to enter, make and perpetually use a canal, on another

line, though perhaps parallel to and near the one located, in the expectation, that by some future act such altered location would be adopted and accepted in lieu of the one located, it seems difficult to perceive how the company can avail themselves of such grant, until by some subsequent act the right is transferred and conveyed to them by the undertaker, who holds the right by deed. It is very clear, that the company would be under no obligation to pay the undertaker for any work done on such altered location, and if money is paid or advanced under such circumstances, it is done in their own wrong, and in confidence, that such after acts shall be done, and grants made, as may reconcile the legal and equitable claims of all the parties.

Cobb
v
Hampshire
&c. Canal
Company.

In the present case, it appears that Sheldon and Hurd entered into a contract with the canal company to do all the work and find all the materials for excavating and constructing the canal and feeders, from the south line of the State at Southwick to the Connecticut river at Northampton, and pay all damages to which individuals should be entitled. But this contract was thus to construct the canal on the line fixed, and had reference to no other. There was a stipulation, that the line might be altered, but it was conditional, and the condition was never complied with. It was to be by the consent of two thirds of a certain committee named in the contract, and no such consent was ever given.

But there is another view of the subject. The contract with Cobb, was with Sheldon and Hurd, Collins and Painter. The two latter were wholly strangers to the defendants, the canal company. The two former were under contract with the company, to construct the canal, but at a different place. By the contract relied upon, it is recited, that it was agreed by Cobb, that Sheldon and Hurd, Collins and Painter, shall have liberty to construct the Hampshire and Hampden canal obliquely through his homestead, in consideration of which hey agree to purchase his homestead at a price fixed, if he elects to sell it at that price, within a limited time, otherwise he is to claim no damage. The liberty is granted to them personally. The consideration proceeds personally from them. Even Sheldon and Hurd do not profess to act for the company, or to obtain the liberty or easement for them. There is no privity in

<div style="float:left">Cobb<br>
*v.*<br>
Hampshire<br>
&c. Canal<br>
Company.</div>

fact or in law, between the plaintiff and the company. And the facts find, that the object of the contract was to favor a speculation in real estate, in which these four persons were engaged. They might have good reason to believe, considering their relation to the company, and the extent to which they themselves were stockholders, that the company would adopt and ratify their act, and then their object would be accomplished. But this contract, so far as it affected the rights of the company, was inchoate, executory and prospective, and a contract *inter alios*, under which no actual rights vested in this company. But before any such act was done, as would make them parties, or vest any right in them, the contract was rescinded by the mutual consent of the parties, and with the intent, as the case finds, to put all the parties in the same state, as if it never had been made. Under these circumstances the Court are of opinion, that this instrument cannot be relied on, as proof of a grant to the company, and that the plea is not supported.